UNITED STATES *v.* JOHN HENSCHEL & CO.

**No. 4855.**—Invoice dated Bremen, Germany, November 18, 1937
    Entered at New York November 27, 1937
    Entry No. 780741

(Decided April 3, 1940)

*Webster J. Oliver*, Assistant Attorney General (*Dorothy C. Bennett*, special attorney), for the plaintiff.
*Lane & Wallace* (*William Young* of counsel) for the defendant.

TILSON, Judge: The merchandise in this case consists of planimeters, or mathematical instruments, exported from Germany in November, 1937. They were invoiced and entered at 41 reichsmarks each, less 50 per centum and less 10 per centum, plus packing, and the importer added to make market value 18.45 reichsmarks. The merchandise was appraised as entered, and the collector brings this appeal, contending for a value higher than the appraised value.

There is no contention between the litigants regarding the *per se* value of 41 reichsmarks each, the sole question being the amount of discount that should be deducted from the base price of 41 reichsmarks each.

At the beginning of the trial counsel for the Government stated as follows:

The question involved is one of discount. The merchandise was invoiced, entered, and appraised at reichsmarks 41 each, less 50 per cent and 10 per cent. The Government contends that the merchandise should be appraised at reichsmarks 41, less 40 per cent. The Government contends that the 10 per cent was a special discount offered this importer as exclusive agent and that the 50 per cent was not freely offered to all purchasers in the home market.

If, as stated by Government counsel, "the 50 per cent was not freely offered to all purchasers in the home market," then it is clear that the base price of 41 reichsmarks less 50 per centum would not represent the proper dutiable foreign-market value of the merchandise, and yet in the brief of counsel for the Government it is contended that this "court should find the dutiable foreign value to be RM 41.00 each, less 50% trade discount, less 2% cash discount, plus packing."

On motion of counsel for the Government, four special agents' reports were admitted in evidence, over the objection of counsel for the importer. The importer offered no evidence.

Collective Exhibit 1 is a special agent's report, dated July 15, 1938, to which is attached two copies of the manufacturer's regular catalog and price lists printed in English, and according to the special agent "This material deals with all of the standard models in pantographs or planimeters made and sold both for exportation and in the German home markets." So far as I have been able to discover neither this report nor the price lists attached thereto make any reference to a planimeter No. 50–A, which is the merchandise covered by this appeal.

According to the special agent's own statement, Exhibit 1 is an investigation "relative to the foreign value and export value of certain pantographs manufactured and shipped by A. Ott, Kempten/Allg., Germany to Keuffel & Esser Co., Hoboken, N. J., under *Consular Invoice No. 557* which was certified at Munich on March 26, 1938." There is nothing in this report to show that the pantographs there under investigation and the planimeters here involved bear any resemblance of any kind to each other, or that they are similar in any respect. Even if it were shown that the merchandise covered by Exhibit 1 and the merchandise in this case was similar, it would appear that the prices at which A. Ott sold or offered his merchandise for sale could not be considered as any value of the instant merchandise, in view of the following statement by the special agent:

While large purchasers of Ott pantographs or planimeters in Germany also receive a trade discount of 33⅓%, I was not convinced that *all* buyers are allowed such discount off the factory gross list prices. Dr. Ott admitted that smaller dealers receive only 10–15% trade discount instead of the maximum 33⅓%, whereas federal and district authorities and other users generally pay the printed list prices without any discount.

Exhibit No. 2, a special agent's report, dated September 19, 1938, is a report of another investigation of Dr. A. Ott. In this report, as in Collective Exhibit 1, there is no suggestion of similarity between

the instant merchandise and that manufactured and sold by Dr. Ott, nor is there any reference in said report to a planimeter No. 50–A. Although Collective Exhibit No. 1 and Exhibit 2 cover investigations of the same manufacturer over approximately the same period of time, and presumably cover approximately the same merchandise, strangely enough Collective Exhibit 1 shows discounts from the base prices ranging from 20 per centum to 42.2 per centum, while Exhibit 2 shows discounts from the base prices ranging only from 15 per centum to 25 per centum.

In Collective Exhibit 3, the special agent states as follows:

Two years ago manufacturer agreed to grant importer Henschel Inc. in New York exclusive sales rights for the entire territory of the United States with the proviso that manufacturer may however still deliver to three old customers in the United States.

\*   \*   \*   \*   \*   \*   \*

Forwarded herewith marked exhibit "A" is copy of manufacturer's general price catalogue. Planimeter No. 50–A will be found in back of catalogue on page 1c at a gross price of RM 41.00 as invoiced.

*Discounts:*

> 50% regular *trade* discount
> 10% extra discount, only granted to importer Henschel account of exclusive sales right.

Of course if this importer had an exclusive sales right to the entire United States for this particular merchandise, and this agreement was in writing, the best evidence thereof would have been the written agreement itself, or an authenticated copy thereof. However, since no objection was made to this report of the special agent on that ground, I am forced to consider his statement as some evidence that such an agreement did exist. If such an agreement did not exist, in either oral or written form, then naturally the 10 per centum so-called extra discount could not be considered as a part of the value of this merchandise.

In considering and weighing these hearsay statements of the special agents, with reference to the exclusive sales rights, I am not unmindful of the fact that if such an agreement did not exist, in either oral or written form, the one person who was perhaps in the best position to refute such statements by the special agents was the importer in this case. He was one of the parties to such an agreement, if it existed, and if such an agreement did not exist he was certainly in a position to show that it did not. Since the importer did not appear to deny such statements by the special agent I must accept those statements as some evidence that there did exist such an exclusive sales rights agreement, and also that the 10 per centum extra discount was allowed this importer solely because of such an agreement.

Upon consideration of the entire record I find and hold the proper dutiable foreign value of the merchandise covered by this appeal to be 41 reichsmarks each less 50 per centum trade discount, less 2 per centum cash discount, plus packing. Judgment will be rendered accordingly.